PAUL RADSKI

*vs.*

THE ANDROSCOGGIN & KENNEBEC RAILWAY COMPANY.

Kennebec.    Opinion April 21, 1923.

*A verdict for plaintiff not disturbed, all questions of fact involved being within the province of the jury, and the instructions of the court on the common law principles of negligence having been full and accurate.*

This plaintiff's horse while escaped from his owner's barn and roving at large on a public way there came upon the tracks of the defendant's trolley line where he was struck by a car of the defendant and killed. No reason is perceived for over throwing the verdict.

On motion for a new trial. An action on the case to recover for the value of a horse belonging to plaintiff, alleged to have been killed through the negligence of the employees of defendant July 1, 1921. The cause was tried before a jury at the April Term, 1922, of the Superior Court in Kennebec County, and the jury returned a verdict for the plaintiff in the sum of $250. The defendant filed a general motion for a new trial. Motion overruled.

The case is fully stated in the opinion.

*Benedict F. Maher*, for plaintiff.

*Andrews, Nelson & Gardiner*, for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, MORRILL, DEASY, JJ.

DUNN, J.   Mr. Paul Radski's horse grazed in his owner's dooryard till after dark on a summer's night.   Then Mr. Radski untethered the animal and put him into a stall, leaving the barn doors open and the beast untied while he himself went to fetch a pail of water.   When he came back, perhaps five minutes later, the horse was gone.   The owner started in search.   In front of his house and extending in either direction in and along the highway were the rails of the defendant's trolley line.   The horse was found a short way up the track, lying dying, a car having struck him.

Mr. Radski brought tort against the railway corporation for killing his horse.   He recovered a verdict.   The defendant has presented a general motion for a new trial.

The horse weighed fifteen hundred pounds or better and was no longer young.   Plaintiff had had him for two years for working on his small farm and for driving to and from town in the winter seasons. He was safe and steady.   Apparently the plaintiff in stabling the horse had left him unhitched at other times.

The time of the mishap was not far from ten o'clock.   A little dampness and some fog were in the atmosphere after a rainy day. The rails were wet, and at the point where the accident occurred there was a slight up grade.   From a curve in the track, around which the car came, the course was straight for a distance of at least three hundred feet.   After it had struck the horse the car kept on going for ninety feet.

There was no direct evidence of any particular act of negligence. The plaintiff, urging the surrounding physical facts as evidential, insisted that those facts disclosed circumstances from which it was a reasonable inference that the defendant's fault was the thing without which the accident would not have been.   That, when the defendant's motorman knew, or when by suitable watchfulness he ought to have known, of the presence of the horse in the zone of danger, he, by the exercise of requisite diligence, could have averted the accident, if his car had been running at an appropriate rate of speed.

Of the witnesses none but the motorman saw the collision.   On his version the car was coasting, at from fifteen to twenty miles the hour, under the impetus gained on the down grade closely behind.   He should have expected the headlight to have revealed the horse at

three hundred feet. He did not, however, see him until within about one hundred feet. Then, at once applying power, he reversed the motor,—than which he was powerless to do more,—to stop the car. But his effort was unavailing. The trolley was shaken from its wire by the impact of striking the horse. The motor was released from reverse, for the reason that the power had gone, and the emergency brake applied, yet the forty-five foot car ran for twice its length. The headlight showing obliquely as the car made the curve, an approaching automobile throwing the rays of its lights in the eyes of the motorman, the thickness of the night, the trees on both sides of the street, and the slipperiness of the track, all were proffered in an explanatory way.

Is the verdict manifestly wrong? Evidence of the defendant's negligence may have been slight. But is it to be said that the jury palpably and grossly erred with regard to the nature and force of the evidence, or that the inferences drawn therefrom were contrary to reason and common sense?

Assuming as a postulate that the defendant was negligent, was there such a failure by the plaintiff to exercise ordinary care to avoid injury to his property, as to make the continuing consequences of his own negligence, in concurrence with the defendant's negligence, the proximate cause of the horse's death? Certainly, as a matter of law, considered in a broad aspect, it is not negligence to leave a stalled horse untied for a space of time of short duration. It might or might not be in fact, the proof in each case determining.

If, to recur to the defendant's part, it was negligent, was such negligence the immediate cause of the final result?

All these questions of fact, together with that of damages which is not now pressed, were within the jury's province. Even the defendant tacitly concedes that the judge's instructions were full and accurate. The situation, let it be marked, was not that of an animal of value straying to and upon a railroad's privately owned location, but that of a horse which had escaped from his owner's barn and was roving at large on a public way. Common law principles of negligence were ruling. *Briggs* v. *Ice Company*, 112 Maine, 344; *Dyer* v. *Mudgett*, 118 Maine, 267.

In the administration of human disputes the law aims only at approximate conclusions—at practical and efficient justice. No reason is perceived for disturbing the verdict.

*Motion overruled.*